**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT K. HUNDALL,**<br><br>**Plaintiff,**<br>**v.**<br><br>**UNIVERSITY OF TEXAS AT EL PASO (UTEP), a governmental entity; WILLIAM DETHLEFS, individually and agent for UTEP; RYAN C. HOLMES, Associate Dean of Students, individually and agent for UTEP; JEFFREY SHEPPARD, Ph.D., Individually and agent for UTEP; YOLANDA LEYVA, Ph.D., individually and agent for UTEP; CATIE MCCORRY-ANDELIS, Associate Vice President and Dean of Students for UTEP, individually and agent for UTEP; GARY EDENS, Vice President for Student Affairs for UTEP, individually and agent for UTEP; MARIA CONTRERAS, individually and Agent for UTEP; JOHN C. LOYA, Chief Administrative Officer for School of Liberal Arts, individually and agent for UTEP; MARIA MICHEL, individually and agent for UTEP; and DOES 1-100.**<br><br>**Defendants.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § | **EP-13-CV-00365-DCG** |

**ORDER GRANTING MOTION TO DISMISS**

Presently before the Court is Defendants University of Texas at El Paso ("UTEP"), William Dethlefs ("Dethlefs"), Ryan C. Holmes ("Holmes"), Jeffrey Shepherd, Ph.D. ("Shepherd"), Yolanda Leyva, Ph.D. ("Leyva"), Catie McCorry-Andalis ("Andalis"), Gary Edens ("Edens"), Maria Contreras ("Contreras"), John C. Loya ("Loya"),and Maria Michel's ("Michel")[1] "Motion to Dismiss Plaintiff [Robert K. Hudnall's] Original Petition" (ECF No. 11).

---

[1] The individual Defendants have been sued both in their individual and official capacities, i.e. as agents of UTEP.

After carefully considering the motion, responses, the record, and the applicable law, the Court enters the following opinion and orders.

## I. Background

On October 9, 2013, Plaintiff Robert K. Hudnall ("Plaintiff" or "Hudnall") filed suit in the 327th Judicial District in El Paso County, Texas. *See* Notice of Removal, Ex. 4, at 6 [hereinafter Original Petition], ECF No. 1. Both Plaintiff and Defendants concede that the first defendant in this case was served on October 15, 2013. *See* Mot. to Remand, Ex. B, ECF No. 3. Pursuant to 28 U.S.C. § 1441, Defendants removed the above-captioned cause on November 13, 2013. *See* Notice of Removal 1.

In his Original Petition, Plaintiff, a current undergraduate student at UTEP, alleges a combination of state and federal claims against the named Defendants.[2] The facts underlying Plaintiff's claims begin with Plaintiff's 2012 application to UTEP's Doctoral Program in Borderlands History, whereby he asserts that he was met with opposition, including "lies, intimidation and [ ] violations of his civil rights." Original Pet. 12–13. Consequently, Plaintiff filed a complaint with the United States Department of Education. *Id.* at 13. While endeavoring to resolve Plaintiff's complaint, Plaintiff alleges that a "secret file" was organized and created by

---

[2] Plaintiff asserts approximately 31 different types of claims against Defendants. The claims asserted by Plaintiff include the following: (1) invasion of privacy; (2) defamation of character; (3) libel; (4) slander; (5) conspiracy; (6) false pretenses; (7) denial of due process; (8) fraud; (9) breach of contract; (10) "profiling [and] discrimination"; (11) "creating a perceived disability" pursuant to 42 U.S.C. § 12182(b)(1)(B); (12) violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d *et seq.*; (13) violation of Title II of the Americans with Disabilities Act, as amended, 42 U.S.C.A. § 12131 *et seq.*; (14) violation of Section 504 of the Rehabilitation Act of 1973, as amended by 29 U.S.C. § 794; (15) violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; (16) "invideous [sic] discrimination" against disabled students; (17) institutional discrimination against disabled veterans; (18) harassment; (19) victimization; (20) psychological harassment; (21) community based harassment or gang-stalking; (22) negligence; (23) gross negligence; (24) assault; (25) violation of Title IX, 20 U.S.C. § 1681 *et seq.*; (26) violation of the Age Discrimination Act of 1975, 42 U.S.C.A. § 6101 *et seq.*; (27) malice; (28) violation of 42 U.S.C. § 1983; (29) medical malpractice; and (30) violations of Section 559 of the Texas Government Code. *See* Original Pet. 26–82.

UTEP officials, and that the file evidences how the officials stereotyped, profiled, and intended to conspire against Plaintiff because of his status as a disabled veteran. *See id.* Plaintiff submits that the secret file includes a report and emails prepared by Defendants Holmes and Dethlefs. *Id.* The alleged file demonstrates that Plaintiff was "analyzed and diagnosed as not being able to fit into college life," *see id.*, and that the officials had seen this sort of behavior with students in combat, such as veterans, *see id.* at 25. Plaintiff also alleges his privacy rights were violated because the report was prepared by university officials without Plaintiff's knowledge. *Id.* at 14.

Plaintiff asserts that his various interactions with university officials somehow affected his pending admission into UTEP's Doctoral Program, despite the fact that Plaintiff has not been accepted or rejected from the university's desired program for Fall 2014.[3] *Id.* Nevertheless, Plaintiff notes that when he first attempted to apply to the program, he was met with opposition. *Id.* at 13. Likewise, Plaintiff alleges that he received no assistance from university officials and university programs, e.g. The Center for Accommodations and Support Services ("CASS"), in helping him prepare his application to the Doctoral Program. *Id.* at 14. Further, when Plaintiff contacted Dean Witherspoon[4], UTEP's Dean of the College of Liberal Arts, for assistance, "she [informed Plaintiff] that he was far too along (too old) and that the requirements of the [Doctoral P]rogram were beyond his capabilities (he is too dumb)." *Id.* at 15. Moreover, Plaintiff alleges that university officials, namely Defendants Shepherd and Leyva, conspired to characterize Plaintiff as a "crazed Vietnam Vet who was dangerous" and "capable of violence." *Id.* at 14–15. In accord, Plaintiff contends that the above characterizations amounted to illegal profiling that

[3] In the complaint, Plaintiff contradictorily asserts that he applied for the program in 2012, but at the same time he was barred from applying to the Doctoral Program. Based on his inconsistent statements, it is unclear as to whether Plaintiff actually submitted an application in 2012.

[4] The Court notes that Plaintiff did not name Dean Patricia Witherspoon as a defendant in this case.

were "accept[ed] and encourage[ed] by the [u]niversity," *see id.* at 45, and that ultimately biased UTEP's consideration of Plaintiff for admission to the Doctoral Program.

Lastly, Plaintiff alleges that on one occasion in April 2013, he was denied access to a locked classroom for approximately 15 minutes. *See id.* Plaintiff alleges that he sought to use an "unused classroom" for a period of 15 minutes prior to the commencement of his class because "he c[an]not stand for long periods of time." *Id.* at 57–58. When Plaintiff requested to use the room, Defendant Loya informed him that the unused classroom was not accessible to any student because of concerns of theft. *Id.* at 58.

Based on the above facts, Plaintiff pleads numerous claims and seeks only monetary damages. Specifically, he pleads $30 million in compensatory damages, $2 million in non-economic damages, $3 million in future damages, and $120 million for exemplary damages. *Id.* at 83–84. In response, Defendants now move to dismiss Plaintiff's complaint contending that the Court lacks jurisdiction and/or Plaintiff's claims fail to state a claim. *See* Mot. to Dismiss 2.

## II. Applicable Law

### *A. Federal Rule of Civil Procedure 12(b)(1)*

A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Pls.)*, 668 F.3d 281, 286 (5th Cir. 2012) ("*Fema I*") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in

dispute. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends upon whether the defendant makes a facial or factual challenge to the plaintiff's complaint. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When the defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *See id.* When the defendant makes a factual attack by providing affidavits, testimony, and other evidence challenging the court's jurisdiction, the plaintiff must submit facts in support of the court's jurisdiction and thereafter bear the burden of proving that the trial court has subject matter jurisdiction. *See Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986); *see also Radar Solutions, Ltd. v. U.S. Fed. Commc'ns Comm'n*, 628 F. Supp. 2d 714, 723 (W.D. Tex. 2009) *aff'd sub nom.*, 368 F. App'x 480 (5th Cir. 2010) (*per curiam*) (unpublished). Nonetheless, "[a] motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *In re FEMA I*, 668 F.3d at 287 (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

*B. Federal Rule of Civil Procedure 12(b)(6)*

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth the applicable standard of pleading. The rule requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). To be

sufficient, a complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A formulaic recitation of the elements of a cause of action or facts that do not permit the court to infer more than the mere possibility of misconduct fails to satisfy the pleading requirements of Rule 8(a). *Id.*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pled must permit the court to infer that the plaintiff's right to relief is plausible. *See id.* at 678–79. To allege a plausible right to relief, the facts pled must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *See Twombly*, 550 U.S. at 566–69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In addition, a court reviews *pro se* pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (explaining the standard). The rationale is that *pro se* plaintiffs often lack the legal training helpful in interpreting and applying the substantive and procedural requirements of the legal system. *See Husley v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991). While noting Plaintiff's *pro se* status, the Court also observes that Plaintiff states that he has a "J.D. from an accredited law school," however, it is unclear as to whether Plaintiff is currently a licensed attorney.[5]

---

[5] *See In re Hudnall,* 379 S.E.2d 517 (Ga. 1989) ("Respondent Robert K. Hudnall has petitioned for voluntary surrender of his license to practice law in the State of Georgia. Respondent Hudnall has admitted violations of multiple standards described in State Bar Rule 4-102. . . . Voluntary surrender of a license is tantamount to disbarment. . . . Application for voluntary surrender of license is granted.").

Original Pet. 21; *accord Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("We cannot accord him the advantage of a liberal construction of his complaint normally given pro se litigants . . . because he is a licensed attorney."). Irrespectively, Plaintiff's *pro se* status does not mean that the Court "'will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing.'" *Jackson v. State Farm Fire & Cas. Co.*, Civ. A. No. 06–7202, 2010 WL 724108, at *2 (E.D. La. Feb.22, 2010) (quoting *Jones v. Alfred*, 353 F. App'x 949 (5th Cir. 2009) (*per curiam*) (unpublished)). Moreover, even from a *pro se* plaintiff, "mere conclusory allegations on a critical issue are insufficient . . . ." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

## III. Discussion

### *A. No Private Right of Action*

Plaintiff asserts claims under the Health Insurance Portability and Accountability Act ("HIPAA"), the Family Educational Rights and Privacy Act ("FERPA"), and the Texas Public Information Act ("TPIA"). Defendants allege that HIPAA, FERPA, and TPIA do not authorize a private right of action to enforce their provisions; therefore, Plaintiff's claims alleged pursuant to those laws shall be dismissed against all Defendants for lack of jurisdiction. Plaintiff does not directly respond to Defendants' contention but only maintains that it is Defendants, not Plaintiff, that invoked this Court's jurisdiction.

#### i. HIPAA

With respect to Plaintiff's HIPAA claim, the Fifth Circuit has explained that HIPAA, which provides civil and criminal penalties for improper disclosure of medical information, has no express provision creating a private cause of action. *See Acara v. Banks*, 470 F.3d 569, 571–

72 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over [Plaintiff's] asserted claims."). Enforcement of the statute is limited to the Secretary of Health and Human Services. *See id.* (citing 42 U.S.C. § 1320d–5); *see also Quintana v. Lightner*, 818 F. Supp. 2d 964, 972–73 (N.D. Tex. 2011). While other courts have suggested that federal jurisdiction might be conferred where the plaintiff's complaint specifically mentions HIPAA and alleges that the defendants violated the federal act in question, *see Healthtek Solutions, Inc. v. Fortis Benefits Ins. Co.*, 274 F.Supp.2d 767, 774 (E.D. Va. 2003) (noting that "HIPAA does not explicitly recognize a private right of action") (citing *Stang v. Clifton Gunderson Health Care Plan*, 71 F.Supp.2d 926, 932 (W.D. Wis. 1999)), this Court declines to depart from Fifth Circuit precedent. Accordingly, Plaintiff's claims under HIPAA should be dismissed against all Defendants for lack of jurisdiction. *See also Mills v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 4:13-CV-352-A, 2013 WL 3356417, at *1 (N.D. Tex. July 3, 2013).

**ii. FERPA**

Plaintiff contends that Defendants violated FERPA by permitting university officials to prepare, compile, and circulate a secret file among Defendants about Plaintiff's mental health problems and perceived disabilities.[6] *See* Original Pet. 62–63. Nonetheless, Plaintiff's FERPA claim fails because Plaintiff has no private right of action to enforce FERPA. The Supreme Court held in *Gonzaga University v. Doe*, 536 U.S. 273, 276 (2002), that individuals are not entitled to maintain private causes of action for violation of FERPA. Because FERPA's provisions speak only to the Secretary of Education, directing that "[n]o funds shall be made available" to any "educational agency or institution" which has a prohibited "policy or practice,"

[6] The Court also notes that Plaintiff does not allege that his FERPA claim arises under 42 U.S.C. § 1983, *see Tarka v. Cunningham*, 917 F.2d 890, 892 (5th Cir. 1990).

20 U.S.C. § 1232g(b)(1), "[t]his focus is two steps removed from the interests of individual students and parents and clearly does not confer the sort of '*individual* entitlement' that is enforceable." *Gonzaga*, 536 U.S. at 287 (quoting *Blessing v. Freestone*, 520 U.S. 329, 343 (1997)) (emphasis in original); *see also Tarka*, 917 F.2d at 892 (5th Cir. 1990) ("FERPA does not create a statutory vehicle to bring such disputes into federal court, nor does it of its own force regulate them."). Consequently, Plaintiff's FERPA claim is not cognizable and thus, must be dismissed against all Defendants. *See also Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 814 (S.D. Miss. 2006).

**iii. TPIA**

Alleging a violation of Section 559 of the Texas Government Code, Plaintiff asserts that Defendants violated Texas' Public Information Act because Defendants did not inform Plaintiff that a "secret file" concerning Plaintiff was being maintained by Defendants. Plaintiff contends that Defendants should have given Plaintiff access and an opportunity to review said file despite the fact that Plaintiff was never aware that such a file existed. *See* Original Pet. 81–82.

While it is not alleged that Plaintiff requested certain records through the Public Information Act pursuant to Chapter 552 of the Texas Government Code, upon receipt of a public information request, a state governmental body must generally provide access to the material within ten business days or seek a ruling from the Attorney General on whether it can be withheld. To the extent Plaintiff complains that Defendants have failed to comply with the Texas Public Information Act, the Court notes that Plaintiff may file a complaint with the Open Records Division of the Attorney General. The Court will not usurp the Attorney General's role in addressing complaints under the Act, and if Plaintiff is asserting any claim under the Texas Public Information Act, the claim is dismissed. *See Trevino-Garcia v. Univ. of Tex. Health Sci.*

*Ctr. Sch. of Med.*, Civ. A. No. 09-CA-0572-XR, 2009 WL 5195962, at *5 (W.D. Tex. Dec. 21, 2009); *see also* Tex. Gov't Code § 552.3215 (allowing for individuals to file complaints concerning alleged violations of the TPIA with either the local district attorney, local county attorney, or with the Attorney General of Texas).

*B. Sovereign Immunity*

Next, Defendants allege that some of Plaintiff's claims fail because they are barred by Texas' sovereign immunity from liability. In raising their immunity defense as a basis for dismissal, Defendants recognize that their removal of the case from state court waived their Eleventh Amendment immunity from suit in federal court. Nonetheless, Defendants maintain that removal did not inescapably waive immunity from liability and that UTEP, as an agency of the state of Texas, has not otherwise waived its immunity from liability as to claims under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 1983, 42 U.S.C. § 1985 and state law torts.

In Texas, governmental immunity takes two forms: immunity from liability and immunity from suit. *See Garcia v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, Civ. A. No. 3:11-CV-3282-B, 2013 WL 1759421, at *5 (N.D. Tex. Apr. 24, 2013) (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002)). Immunity from liability is an affirmative defense that bars the enforcement of a judgment against a governmental entity, whereas immunity from suit bars altogether an action against a governmental entity unless consent to suit has been granted. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Texas courts have long recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the state. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997) (citing *Director of the*

*Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265–66 (Tex. 1980). As such, even though the state may consent to suit, the state "retains immunity from liability." *See id.* (citing *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex. 1970)) ("*Immunity from liability* protects the State from judgments even if the [Texas] Legislature has expressly given consent to the suit."). In other words, even if the state "authorizes suit against the State, the question remains whether the claim is one for which the State acknowledges liability." *See id.* (citing *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 425 (1936)). Accordingly, the state neither creates nor admits liability by granting permission to be sued. *See id.*

As noted by Defendants, the Fifth Circuit similarly maintains that "state sovereign immunity consists of two separate and different kinds of immunity, immunity from suit and immunity from liability." *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 254–55 (5th Cir. 2005), *reh'g denied with opinion* 454 F.3d 503 (2006), *cert. denied* 550 U.S. 917 (2007). Our appellate court's holding is premised on the reading that the "Constitution guarantees a state's [i.e. Texas] prerogative, by its own law, to treat its immunity from liability as separate from its immunity from suit for purposes of waiver or relinquishment." *Id.* at 255 (recognizing that Texas has preserved separate immunities from suit and liability). Thus, "the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so." *Id.*

In denying a petition for rehearing in *Meyers*, our appellate court clarified that:

> The narrow holding in the instant case is that, under the Supreme Court's decision in *Lapides v. Bd. of Regents of Georgia*, [535 U.S. 613 (2002)], when a State removes to federal court a private state court suit based on a federal-law claim, it invokes federal jurisdiction and thus waives its unqualified right to object peremptorily to the federal district court's jurisdiction on the ground of state sovereign immunity. However, that

> waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts. In sum, Texas may assert its state sovereign immunity as defined by its own law as a defense against the plaintiffs' claims in the federal courts, but it may not use it to defeat federal jurisdiction or as a return ticket back to the state court system.

*Meyers*, 454 F.3d at 504. Following *Meyers*, the Fifth Circuit and its district courts have consistently held that "[a] state's voluntary removal of an action to federal court (or its consent to removal) waives its immunity from suit, but not its immunity from liability." *Kelley v. Papanos*, Civ. A. No. H–11–0626, 2012 WL 208446, at *3 (S.D. Tex. Jan .24, 2012) (holding that the state may continue to "assert its state sovereign immunity as defined by Texas law *as a defense*" to the claims removed to federal court but could not assert its immunity "to defeat federal jurisdiction or as a return ticket back to the state court system" (citing *Meyers*, 454 F.3d at 504)); *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F.Supp.2d 729, 737 (W.D. Tex. 2011) ("The Fifth Circuit has held that there is a distinction between immunity from suit in federal court, which a state may waive by removal to federal court, and immunity from liability.").

Defendants admit that by removing the case from state to federal court, Defendants invoked this Court's jurisdiction and therefore waived its immunity from suit. Defendants, however, concurrently and correctly contend that the act of removal does not affect its ability to invoke state sovereign immunity against liability. *See* Mot. to Dismiss 6–7. Thus, UTEP "may assert its state sovereign immunity as defined by [Texas] law *as a defense* against" Hudnall's claims in federal court. *See Meyers*, 454 F.3d at 504 (emphasis added).

**i. 42 U.S.C. § 1983**

Plaintiff files a discrimination claim pursuant to 42 U.S.C. § 1983 against all Defendants in this case. Section 1983 provides a private right of action for damages to individuals who are

deprived of "any rights, privileges, or immunities" protected by the Constitution or federal law by any "person" acting under the color of state law. 42 U.S.C. § 1983. Following Supreme Court precedent, our appellate court maintains that "'neither a state or persons acting in their official capacities are 'persons' under § 1983,' though state officials in their official capacities, when sued for injunctive relief, are 'persons' under § 1983." *See Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 & n.10 (1989)); *see also Lapides*, 535 U.S. at 617. Our appellate court has also recognized that state universities as arms of the state are not "persons" under § 1983. *See Stotter*, 508 F.3d at 821 (citing *Texas v. Walker*, 142 F.3d 813, 820 n.10 (5th Cir. 1998) (noting specifically that University of Texas Health Science Center and Regents of the University of Texas are arms of the state); *Laxey v. La. Bd. of Trustees*, 22 F.3d 621, 623 n.2 (5th Cir. 1994)); *see also Gaby v. Bd. of Trs.*, 348 F.3d 62 (2d Cir. 2003); *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996) *aff'd,* 122 F.3d 1066 (5th Cir. 1997).

While Plaintiff repeatedly asserts that Defendant UTEP is not an arm of the state (or an agency of the state), Plaintiff's contentions are contrary to applicable law. Entities within the University of Texas System are "arms of the State" and not persons under section 1983. *See Bagg v. Univ. of Tex. Med. Branch*, 726 S.W.2d 582, 584–86 (Tex. App.—Houston 1987, writ ref'd n.r.e.); *accord U.S. ex rel. King v. Univ. of Tex. Health Sci. Ctr.—Houston*, App. No. 12-20795, 2013 WL 5881083, at *5 (5th Cir. Nov. 4, 2013).[7] In accord, UTEP is an entity within

---

[7] In *King*, the Fifth Circuit stated that a state institution is an arm of the state. In support, the *King* Court noted that

> the [Texas] state constitution provides for the establishment of the University of Texas System. Tex. Const. art. VII, § 10 ("The Legislature shall as soon as practicable establish, organize and provide for the maintenance, support and direction of a University of the first class, to be located by a vote of the people of this State, and styled 'The University of Texas', for the promotion of literature,

the University of Texas System. *See* Tex. Educ. Code Ann. § 65.02(a)(4). As Section 1983 is inapplicable to UTEP and Defendants acting in their official capacities, Plaintiff's Section 1983 claims must be dismissed.[8]

a. Section 1983 Claim Against Defendant Dethlefs

Plaintiff also alleges a Section 1983 claim against Defendant Dethlefs, presumably in his individual capacity, for defamation. In order to bring a defamation claim pursuant to Section 1983, a Plaintiff must allege a violation of a federal constitutional right. The statute does not provide a litigant with a substantive right but is a remedial vehicle for constitutional violations. *See San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991). While Plaintiff appears to allege that Dethlef's defamation affected him emotionally and mentally, Plaintiff's allegations are insufficient to establish a cause of action under Section 1983. *See Thomas v. Kippermann*, 846 F.2d 1009, 1010 (5th Cir. 1988) ("Damage to one's reputation alone, apart from some more tangible interest such as employment, does not implicate any "property" or "liberty" interest sufficient to invoke the due process clause."). Because Plaintiff's pleading fails to allege a constitutional violation, Plaintiff's claim against Dethlefs is dismissed for failure to state a claim.

---

> and the arts and sciences."). The Center is part of the University of Texas System. Tex. Educ.Code § 65.02(a) ("The University of Texas System is composed of the following institutions and entities: . . . [(4) The University of Texas at El Paso."). Texas statutes consider "a [public] university system or an institution of higher education" to be a "state agency." Tex. Gov't Code § 572.002(10)(B).

*See id.*

[8] *See also Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 367 (5th Cir. 2012) (*per curiam*) (unpublished) ("No exception applies to his § 1983 claims, because there has been no abrogation by Congress, *see Quern v. Jordan*, 440 U.S. 332, 345 [] (1979), nor waiver by the State of Texas, *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)).

b. <u>Section 1983 Claim Against Defendant Holmes</u>

Because the Court is required to liberally construe the complaint, the Court also observes that Plaintiff attempts to allege a procedural due process claim against Defendant Holmes. *See* Original Pet. 43. The Court thus addresses Plaintiff's claim in the context of Section 1983. Here, Plaintiff alleges that "he [received] a misleading summons" and was told to "report to" Defendant Holmes' office." *Id.* Further, Plaintiff asserts that he was not informed of the issue that would be discussed at the meeting and that he was denied the opportunity to have a representative present at the meeting. *See id.* Plaintiff alleges that he was denied procedural due process because Chapter 1, Subsection 1.4.3.4 of UTEP's Handbook of Operating Procedures provides that "as part of the investigation process, the accused individual shall be provided with a copy of the complaint and allowed ten (10) working days to respond in writing." *Id.* While Plaintiff alleges that Defendant Holmes violated a subsection of the university handbook, Plaintiff does not allege the purpose of the summons, the violation that Plaintiff was accused of or that the violation resulted in any action against him. Thus, at least from the outset, it is unclear as to whether the relevant subsection is applicable in the instant case.

Moreover, the existence of university policies or procedures does not necessarily give rise to a property interest. "[F]or a person to have a procedural due process claim that damages or other relief can remedy, he must have been denied life, liberty, or property protected by the Fourteenth Amendment." *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012). Property or liberty interests may be "created and defined by existing rules or understandings that stem from an independent source such as state law," *id.* at 598, including the policies and procedures of public universities. *See Bd. of Regents v. Roth*, 408 U.S. 564, 578 (1972). If a due process entitlement exists, the party enjoying the entitlement is entitled to "notice and an opportunity to

be heard . . . at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 239 (5th Cir. 2012). After reviewing Plaintiff's complaint, the Court concludes that Plaintiff fails to identify a property interest—one that requires "more than an abstract need or desire for it . . . more than a unilateral expectation . . . [one where plaintiff has] a legitimate claim of entitlement to it." *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269–70 (5th Cir. 2012). Therefore, Plaintiff's procedural due process claim against Holmes fails.

**ii. 42 U.S.C. § 1985**

"Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). The only form of alleged conspiracy that appears to be applicable in this case is a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law. *See* 42 U.S.C. § 1985(3). To state a claim under § 1985(3), Plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. *See Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). He must further allege that the conspirators were motivated by "some racial, or . . . class-based, invidiously discriminatory animus." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) ("This Circuit has held that the class-based animus requirement of § 1985(3) applies equally to causes of action under the second clause of §

1985(2).") (internal citations and quotations omitted); *see also Horiast v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).

As an arm of the state, UTEP and the individual Defendants in their official capacities are not 'persons' within the meaning of § 1985. *See Washington v. Louisiana*, 425 F. App'x 330, 333 & n.2 (5th Cir. 2011) (*per curiam*) (unpublished) (citing *Will*, 491 U.S. at 71 (holding that a state is not a person under § 1983); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (concluding that a lack of personhood under § 1983 equates to a lack of personhood under § 1985)). Extending the reasoning applicable to Plaintiff's claims asserted under Section 1983, "[a]ny possible claim under Section 1985 is doomed for the same reason" because UTEP and the individual Defendants acting in their official capacities are not deemed 'persons' under the statute. *See Chao*, 398 F.3d at 898 (7th Cir. 2005). In accord, Plaintiff's claim against UTEP and Defendants acting in their official capacities are dismissed.

With respect to Plaintiff's Section 1985 claims against the individual Defendants, acting in their individual capacities, Plaintiff makes only a conclusory allegation that Defendants "act[ed] in concert to deprive Plaintiff . . . of his right to due process [i.e. denying Plaintiff access to the 'secret' file]." *See* Original Pet. 74. While Plaintiff provides the correct statutory language, he fails to plead any facts that he was injured due to racial or class-based animus. As such, Plaintiff's claims against the individual Defendants are dismissed for failure to state a claim.

**iii. ADAAA**[9]

---

[9] The ADA was amended on September 25, 2008, with an effective date of January 1, 2009. ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553 (2008). The Fifth Circuit noted in *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009), that the ADAAA does not apply retroactively. The Fifth Circuit further noted in *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009), that the relevant time for assessing the existence of a

The ADAAA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C.A. § 12112(a) (West 2009). Liberally construing Hudnall's complaint, the Court understands Plaintiff to assert that he was discriminated against when he was denied access to a locked classroom 15 minutes prior to class.

Defendants allege that Plaintiff's ADAAA claims are barred by state sovereign immunity, and that Plaintiff failed to show that the state has waived its immunity. *See* Mot. to Dismiss 8 (citing *Dansby-Giles v. Jackson State Univ.*, Civ. A. No. 307-CV-452-HTWLRA, 2010 WL 780531, at *2 (S.D. Miss. Feb. 28, 2010)). In accord, Defendants concede that when they removed the case to federal court, they voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277 (5th Cir. 2005) ("[A] state always has the prerogative of foregoing its protection from federal court jurisdiction under the Eleventh Amendment."). The waiver is not, however, conclusive as to whether UTEP waived its immunity from liability. UTEP's immunity from liability rests upon whether Texas has put forth an unequivocal waiver of immunity with regard to claims under the ADAAA. While Defendants urge the Court to presume that UTEP is immune from liability under Texas law, the Court finds that Defendants' briefing on the matter is presently insufficient.[10] Nevertheless, Defendants also claim that Plaintiff fails to state a claim under the ADAAA.

a. <u>Failure to State a Claim Under the ADAAA</u>

Title II of the ADAAA, 42 U.S.C. § 12132, provides that:

---

disability is the time of the adverse employment action. Here, all of Plaintiff's factual allegations occurred after 2009, as such the Court applies the ADAAA.

[10] *Mathai v. Bd. of Sup'rs of La. State Univ. & Agr. & Mech. Coll.*, Civ. A. No. 12-2778, 2013 WL 3776580, at *4 (E.D. La. July 17, 2013) *aff'd sub nom.* 13-30829, 2013 WL 6908891 (5th Cir. Dec. 30, 2013) ("Congress abrogated state sovereign immunity in suits alleging violations of the Americans with Disabilities Act.").

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

For Plaintiff to prevail on his disability discrimination claim under Title II of the ADA, Plaintiff must allege that: (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability. *See Hale*, 642 F.3d at 499; *Ladwig v. Bd. of Sup'rs of La. State Univ. & Agr. & Mech. Coll.*, 842 F. Supp. 2d 1003, 1008 (M.D. La. 2012) *aff'd*, 481 F. App'x 239 (5th Cir. 2012).

Having carefully reviewed Hudnall's complaint, the Court finds that the ADAAA claim is deficient in several respects. First, the complaint fails to allege a qualified "disability" under the ADAAA. To state an ADAAA claim, a plaintiff must, as a threshold requirement, allege facts supporting an inference that he has a "disability" within the meaning of the Act. *See Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (citations omitted). The ADAAA defines "disability" using three alternatives: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual—i.e., an actual disability; (B) a record of such an impairment—i.e., a record of disability; or (C) being regarded as having such an impairment—i.e., a regarded-as disability. 42 U.S.C.A. § 12102(1)(A)–(C) (West 2009). However, a failure-to-accommodate claim may not be based on a regarded-as disability. 42 U.S.C.A. § 12201(h) (West 2009) ("A covered entity under [Title II of the ADAAA] . . . need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section."); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011); *Hohider v. UPS,*

*Inc.*, 574 F.3d 169, 188 n.17 (3d Cir. 2009). Accordingly, Hudnall must assert an actual or record-of disability.

Hudnall asserts that he asked UTEP and the individual Defendants to unlock the classroom door 15 minutes before the start of his class because he has a physical disability and cannot stand for extended periods of time. *See* Original Pet. 57. Plaintiff initially alleges that he is "disabled" and "is currently under medical care for his physical injuries" and that "he [cannot] stand [or walk] for long periods of time," however, it is unclear as to the nature of Plaintiff's physical impairment. *See* Original Pet. 53, 57–58. Merely alleging that one has a physical disability is insufficient for the Court to reasonably infer that one has a "physical impairment" as defined under the EEOC regulations.[11] Hudnall is also required to plead facts giving rise to an inference his "physical disability" substantially limits one or more of his "major life activities."[12] 42 U.S.C. § 12102(1)(A). Because Hudnall's complaint fails to do so, it fails to state an actual disability as defined under 42 U.S.C.A. § 12102(1)(A). His complaint likewise fails to state a record-of disability under 42 U.S.C.A. § 12102(1)(B). To state a record-of disability, Hudnall's complaint must allege facts from which the Court can reasonably infer not only that he has a record of an impairment, but also that his impairment substantially limits one or more of his

[11] EEOC regulations define physical impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

[12] "'Major life activities' are those activities that are of central importance to daily life." *Hale*, 642 F.3d 492, 500 (5th Cir. 2011) (internal quotation marks and citation omitted). The EEOC regulations define "major life activities" as including such activities as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i).

major life activities.[13] 29 C.F.R. § 1630.2(k); *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 615 (5th Cir. 2001). Moreover, to the extent Hudnall endeavors to allege that he was regarded as having an impairment, discussed *supra*, failure-to-accommodate claims are not based on a regarded-as disability. When viewing the facts in a light most favorable to Plaintiff, the Court determines that Plaintiff failed to establish that he has a qualifying disability.[14]

With respect to the second factor— "he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity"—Defendants allege that denial of access to a locked classroom prior to class does not constitute a "denial of services, programs, or activities." *See* Mot. to Dismiss 9. Plaintiff fails to allege how access to a locked, unused classroom equates to a denial of benefits provided by the university. Rather, upon reviewing the complaint, it can be reasonably inferred that Plaintiff continued to attend class despite the fact that the classroom was locked prior to class. Furthermore, Plaintiff fails to establish that the requested accommodation was required to "access a public program or service" provided by Defendants. *See Van Velzor v. City of Burleson*, Civ. A. No. 3:12-CV-2508-G, 2013 WL 3579339, at *4 (N.D. Tex. July 12, 2013) (citing *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059–60 (5th Cir. 1997)).[15]

---

[13] *See* 29 C.F.R. § 1603.2(k)(3) ("An individual with a record of a substantially limiting impairment may be entitled, absent undue hardship, to a reasonable accommodation if needed and related to the past disability. For example, an employee with an impairment that previously limited, but no longer substantially limits, a major life activity may need leave or a schedule change to permit him or her to attend follow-up or "monitoring" appointments with a health care provider.").

[14] "The effects of an impairment must be severe to qualify as a disability under the ADA." *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003) (citing *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002)).

[15] The Court notes that Plaintiff also alleges claims of "invideous [sic] discrimination" and "institutional discrimination." Original Pet. 63–64. Plaintiff alleges that although UTEP created The Center for Accommodations and Support Services ("CASS")—a center that accommodates students with

Lastly, even if Plaintiff established that he is a qualified individual with a disability and that he was either excluded from participation or denied the benefits of UTEP's services or programs, his claim would still fail under the third factor. Plaintiff fails to present any evidence that he was excluded by reason of his disability. That is, Plaintiff must also demonstrate that Defendants discriminated against him because of his disability. Plaintiff and Defendants both appear to concede that as a matter of policy, unused classrooms are locked because of general theft concerns. In accord, Hudnall fails to allege any facts that plausibly suggest that any exclusion from benefits, denial of services, or discrimination he may have suffered was on account of a qualifying disability. As Hudnall fails to plead the elements of a disability discrimination claim, the Court dismisses Plaintiff's claim under the ADAAA.[16]

**iv. State Tort Claims**

Defendants also assert that they retain immunity from liability against Plaintiff's state tort claims because Plaintiff's claims fall outside the Texas Tort Claims Act's ("TTCA") limited

---

disabilities—CASS "is actually not pro-disabled but rather labels and reports on [d]isabled students." *Id.* at 64. Moreover, Plaintiff alleges that UTEP "inherently discriminate[s] against disabled veteran[s] and specifically against Plaintiff." *Id.* at 65. Notwithstanding Plaintiff's allegations, it is unclear how Defendants discriminated against Plaintiff and denied him the benefits of services, programs, or activities. While invidious and institutional discrimination, as alleged by Plaintiff, are not necessarily claims, the Court considers Plaintiff's allegations in determining whether Plaintiff validly states a claim under the ADAAA.

[16] Liberally construing Hudnall's claims, and thus presuming that Plaintiff also asserts his ADAAA claim against Defendants in their individual capacities, the Court notes that university officials cannot be held individually liable. *See Bellow v. Bd. of Sup'rs of La. State Univ. & Agr. & Mech. Coll.*, 913 F. Supp. 2d 279, 288 (E.D. La. 2012) *aff'd in part sub nom. Bellow v. LeBlanc*, 13-30075, 2013 WL 6671805 (5th Cir. Dec. 19, 2013). Although Plaintiff fails to state a claim, the Court also dismisses his claims against the individual Defendants because Plaintiff fails to allege how the individual Defendants satisfy the definition of "employer" pursuant to the ADAAA. *See id.*; *see also Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities"); *Walker v. City of Vicksburg, Miss.*, Civ. A. No. 5:06cv60–DCB–JMR, 2008 WL 126948, at *1 (S.D. Miss. Jan.10, 2008) (holding that ADA "does not operate to impose liability upon individual employees"); *Kacher v. Houston Comm. Coll. Sys.*, 974 F.Supp. 615, 619 (S.D. Tex. 1997) (individuals acting in their individual capacity who do not meet statutory definition of "employer" cannot be sued under the ADA).

waiver of immunity. *See* Mot. to Dismiss 10. Further, supposing Plaintiff has sued an individual Defendant for a tort in his or her individual capacity, Defendants allege that Plaintiff's claims are barred by Section 101.106 of the Texas Practice and Remedies Code. *See id.*

Albeit Plaintiff's contentions to the contrary, his tort claims against UTEP and the individual Defendants are brought under the TTCA. "Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [TTCA]'." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).[17]

Under the TTCA, "[t]he State of Texas, its agencies, and subdivisions generally enjoy sovereign immunity from tort liability." *Subbiah v. Kiel*, 850 F. Supp. 2d 653, 660 (N.D. Tex. 2011) *aff'd sub nom. Muthukumar v. Kiel*, 478 F. App'x 156 (5th Cir. 2012) (citing *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)). As maintained above and consistent with relevant law, UTEP is a state agency that falls within the purview of the TTCA. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Crowder*, 349 S.W.3d 640, 646 (Tex. App.—Houston 2011, no pet.) (citing *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 354 & n.5 (Tex. 2004) (indicating that institution that was a part of The University of Texas System was a state agency); *Bagg v. Univ. of Tex. Med. Branch at Galveston*, 726 S.W.2d 582, 584 (Tex. App.—Houston 1987, writ ref'd n.r.e.) (concluding that an institution that is part of The University of Texas System is a state agency), *disapproved on other grounds by, City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007)). Thus, a state university like UTEP is deemed a 'governmental unit' for state sovereign immunity purposes pursuant to the TTCA. *See Crowder*,

[17] The Court in *Garcia* definitively dispelled any notion that Plaintiff did not elect to sue UTEP under the Texas Tort Claims Act. *See Garcia*, 253 S.W.3d at 659 (citing *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997)).

349 S.W.3d at 646 ("A state agency falls within the definition of governmental unit); *see also* Tex. Civ. Prac. & Rem. Code § 101.001(3)(A) (West 2005) (defining "governmental unit" as used in Section 101.106 to include state agencies); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

The TTCA provides the "only, albeit *limited*" means of recovery against the government under Texas tort law. *See Subbiah v. Kiel*, 850 F. Supp. 2d at 660 (quoting *Garcia*, 253 S.W.3d at 659 (emphasis added)). Accordingly, the only tort claims *not* barred by sovereign immunity are those that involve "the use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." Tex. Civ. Prac. & Rem. Code § 101.021.

a. Dismissal of Claims Against Defendants Sued in Individual Capacity

Under the TTCA, Defendants preliminarily move to dismiss the state tort claims, if any, against Defendants acting in their individual capacities. In support, Defendants cite to the TTCA, which indicates that

> [i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

Tex. Civ. Prac. & Rem. Code § 101.106(f). Thus, "a defendant is entitled to dismissal under [S]ection 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the [TTCA]." *Tipps v. McCraw*, 945 F. Supp. 2d 761, 766 (W.D. Tex. 2013) (citing *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App.—Houston 2011, no pet.)). While the statute strongly favors dismissal of governmental employees, *see id.* (citing *Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex. App.—Waco 2005,

pet. denied)), Section 101.106(f) "foreclose[s] suit against a government employee in his *individual* capacity if he was acting within the scope of employment." *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011) (emphases added).

The first prong of Section 101.106(f) is whether the conduct at issue was within the scope of the defendant's employment with a governmental unit. "This first component encompasses two inquiries: 'whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time.'" *Tipps*, 945 F. Supp. 2d at 766 (quoting *Anderson*, 365 S.W.3d at 124). The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem.Code § 101.001(5). In addition, the Restatement (Third) of Agency provides that an "employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." Restatement (3d) of Agency § 7.07.

It is not disputed that Defendants Dethlefs, Holmes, Shepherd, Leyva, Andalis, Edens, Contreras, Loya and Michel were employees of UTEP —a governmental unit—at the relevant period in question. Plaintiff's claims for invasion of privacy, defamation, libel, slander, civil conspiracy, fraud,[18] harassment, victimization, negligence, gross negligence, assault, malice, and medical malpractice all arise from communications and interactions with the individual Defendants at UTEP. Since Plaintiff consistently and repeatedly asserts throughout the complaint that the individual Defendants were acting as "agent[s] of UTEP," the Court finds no

[18] While Plaintiff alleges a civil claim for "false pretenses," the Court notes that such a claim does not exist in state law. Upon reviewing Plaintiff's allegations, the Court finds that Plaintiff is attempting to assert a fraud claim.

reason to conclude to the contrary and thus finds that the first prong is satisfied. *See, e.g.*, Original Pet.

The second prong of Section 101.106(f) is whether suit "could have been brought against the governmental unit under the [TTCA]." *Anderson*, 365 S.W.3d at 124. In *Franka*, the Texas Supreme Court construed the phrase "could have been brought under this chapter against the governmental unit." *See Franka*, 332 S.W.3d at 369. Although the issue before the *Franka* Court was whether a government employee must demonstrate the suit could *successfully* be brought against the governmental unit to qualify for statutory immunity under Section 101.106(f), the court held that, for the purposes of Section 101.106(f), a tort action "could have been brought under" the TTCA regardless of whether the Act waives immunity for the tort action. *Id.* at 375; *accord id.* at 382 & n.67 (noting that prior to *Franka*, a majority of Texas courts had interpreted "could have been brought under this chapter against the governmental unit" to mean the suit must be one where the state has waived its sovereign immunity). In this case, even though the TTCA does not waive liability for intentional torts, they arise "under" the Act for purposes of § 101.106(f). Because Plaintiff's state law claims for invasion of privacy, defamation, libel, slander, civil conspiracy, fraud, harassment, victimization, negligence, gross negligence, assault, malice, and medical malpractice all "could have been brought under" the Texas Tort Claims Act against UTEP, a governmental unit, Plaintiff's claims against the individual Defendants acting in their individual capacities are dismissed.

b. Irrevocable Election of Remedies

Defendants also move to dismiss Plaintiff's state law claims against the individual Defendants pursuant to Section 101.106(e) of the Texas Civil Practice & Remedies Code, which mandates dismissal of any state law claim against the individually named Defendants.

Under the election-of-remedies provisions of the TTCA, a plaintiff who sues under the TTCA must elect between suing a governmental unit and suing an employee of that unit. *See* Tex. Civ. Prac. & Rem. Code § 101.106; *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010). If he sues the governmental unit, the suit "constitutes an *irrevocable* election" by him and "bars any suit or recovery by [him] against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code § 101.106(a) (emphasis added). The TTCA specifically provides that:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

*Id.* at § 101.106(e). The Texas Supreme Court has explained that Section 101.106's "apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable," "thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Garcia*, 253 S.W.3d at 657. Thus, "[b]y requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone, [S]ection 101.106 narrows the issues for trial and reduces delay and duplicative litigations costs." *Id.* The election-of-remedies provisions in Section 101.106 covers all state tort claims, whether intentional or negligent, and whether brought under common law or the TTCA. *See Bustos*, 599 F.3d at 463–64.

Plaintiff alleges numerous tort claims against both UTEP and its employees based on the same subject matter. Specifically, Plaintiff alleges claims of invasion of privacy, defamation, libel, slander, civil conspiracy, fraud, intentional infliction of emotional distress, negligence, gross negligence, malice, assault and medical malpractice against the individually named

Defendants and claims of intentional infliction of emotional distress[19], fraud, negligence, gross negligence, malice[20], and medical malpractice.[21] Thus, by suing UTEP, Plaintiff has made an irrevocable election of remedies and is barred from suing the individual Defendants. *See* Tex. Civ. Prac. & Rem. Code § 101.106(a). Since UTEP seeks the individual Defendants' dismissal from suit under Section 101.106(e), Plaintiff's tort claims against the individual Defendants must be dismissed immediately. *See id.* § 101.106(e); *Garcia*, 253 S.W.3d at 659 (holding that "[u]nder subsection (e), [the employee] would be entitled to dismissal of [the plaintiff's] suit against him upon the [governmental employer] filing of a motion [to dismiss]" notwithstanding the fact that different tort claims were asserted against the governmental employer and the employee). Therefore, Plaintiff's only remaining tort claims asserted against UTEP are intentional infliction of emotional distress, fraud, negligence, gross negligence, and medical malpractice.

c. <u>Limited Waiver of Sovereign Immunity Under the TTCA</u>

Though the TTCA authorizes a limited waiver of immunity for certain claims against governmental entities, *see* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109, the TTCA expressly preserves immunity from intentional torts, including assault and battery, false imprisonment,

---

[19] Plaintiff alleges claims of "harassment" and "gang-stalking harassment." Plaintiff defines said causes of actions as "constant watching [and stalking] which is a form of terrorism used against an individual in a malicious attempt to reduce the quality of a person's life so they will have [] a nervous break-down . . . and experience constant mental, emotional, or physical pain, become homeless . . ." Original Pet. 68– 69. Thus, based on Plaintiff's complaint, the Court infers that Plaintiff is endeavoring to allege a claim of intentional infliction of emotional distress.

[20] "Malice" in itself is not a tortious cause of action, as such, the Court dismisses Plaintiff's alleged claim for failing to state a claim.

[21] Plaintiff also asserts claims of victimization. Upon review of relevant case law, the Court finds that victimization is not a recognized cause of action under Texas law. To the extent that Plaintiff pleads said claim as tortious conduct, Plaintiff's claim is dismissed for failure to state a claim. Nonetheless, after carefully reviewing the complaint, the Court considers the allegations stated therein to support his claims of discrimination.

fraud, and intentional infliction of emotional distress. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2) (sovereign immunity retained for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Bustos*, 599 F.3d at 463 (identifying intentional infliction of emotional distress as an intentional tort); *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009); *Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623, 629 n.3 (S.D. Tex. 2007) ("[TTCA] does not waive state immunity for intentional torts such as fraud."). In accord, "[t]his provision shields municipalities from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective." *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (internal citations omitted). In the instant case, Plaintiff alleges a claim of intentional infliction of emotional distress and fraud against UTEP. Because UTEP enjoys immunity from these claims under the TTCA, the Court dismisses Plaintiff's intentional tort claims against UTEP.

Moreover, Plaintiff alleges claims of negligence, gross negligence and medical malpractice against UTEP. Notwithstanding TTCA's limited waiver of immunity for certain suits against governmental entities, the TTCA provides that a governmental unit in the state is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*See* Tex. Civ. Prac. & Rem. Code § 101.021. To fall within the purview of the Act's limited waiver of immunity, the negligence, gross negligence or medical malpractice of the governmental employee must be the proximate cause of the injury and must involve a condition or use of tangible personal property under circumstances where there would be private liability. *See Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002) (citing *Gonzales v. City of El Paso*, 978 S.W.2d 619, 623 (Tex. App.—El Paso 1998, no pet.)).

Aside from Plaintiff's allegations that UTEP denied Plaintiff the use of a computer, Plaintiff does not allege and the Court cannot infer that Plaintiff endured property damage, personal injury, or death arising from the use of motor-driven equipment, nor does he allege any personal injury or death caused by an unsafe condition on state-owned premises by UTEP's employees. Therefore, there has been no waiver of immunity by UTEP for the above-stated claims and, the Court dismisses Plaintiff's negligence, gross negligence and medical malpractice claims against UTEP.

*C. Standing*

Defendants also assert that Plaintiff lacks standing concerning his claims that he was denied admission into UTEP's Doctoral Program. While Plaintiff alleges that he attempted to apply for the Doctoral Program in 2012 (for Fall 2013), Plaintiff also alleges that he was barred from applying to the program; moreover, he fails to allege that he submitted an application to said program or that he received a denial letter from the program from his 2012 application. *Compare* Original Pet. 29, *with id.* at 25 & 65. It is undisputed that Plaintiff has not yet been denied or accepted into the Doctoral Program for Fall 2014. Even if the Court were to infer that Plaintiff did in fact submit an application, it is unclear as to whether Plaintiff is seeking relief for

UTEP's alleged refusal to accept Plaintiff's application in 2012,[22] or the undergoing application process for Fall 2014.

To establish standing, three requirements must be met, or in this case, alleged to be true in the pleadings. Our appellate court holds that,

> [f]irst and foremost, there must be alleged (and ultimately proved) an 'injury in fact'—a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799–800 (5th Cir. 2012) (internal citations and quotations omitted). With respect to Plaintiff's remaining claims, Plaintiff asserts that his claims under the Age Discrimination Act of 1975 and Title IX stem from Defendants denying Plaintiff admission into the Doctoral Program. Applying the foregoing principles, it is unclear as to whether Plaintiff satisfies his burden of establishing Article III standing (i.e. injury-in-fact) to bring the aforementioned claims. Out of abundance of caution, the Court endeavors as to whether Plaintiff sufficiently pleads his remaining causes of action.

---

[22] The Court also observes that Plaintiff's attachments evidence that he did not successfully submit an application to the program in 2012. Most notably, Plaintiff's Exhibit A, which is attached to the complaint, supports Plaintiff's allegation that while trying to apply for the Doctoral Program, Plaintiff sought to submit his 20-year-old Graduate Record Examination (GRE) scores notwithstanding the fact that scores are generally not accepted after five years. *See* Original Pet., Ex. A. Exhibit A, however, is an agreement between Plaintiff and UTEP that states that "[s]hould Mr. Hudnall decide to submit an application for admission into UTEP's [Doctoral Program] during the next application period, UTEP will not require the GRE score as part of the application process. . . . The next application deadline is February 1, 2014." *Id.*

*D. Failure to State a Claim*

Defendants also contend that Plaintiff's remaining claims—that is violations of Title IX, Section 504 of the Rehabilitation Act, the Age Discrimination Act of 1975, and breach of contract—should be dismissed because they fail to state a claim for relief. The Court now addresses the remaining claims.

**i. Title IX**

Plaintiff alleges that Defendants violated Title IX when Plaintiff "was denied entry into the Doctoral Program and discriminated against by the actions of [UTEP] in regard to being labeled and singled out." Original Pet. 73.

Section 901(a) of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Along with an express administrative enforcement remedy, the Supreme Court has recognized an implied private right of action to enforce Title IX. *See, e.g., Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979). "In such a suit, both injunctive relief and damages are available." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) (citing *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992)); *see also Minnis v. Bd. of Sup'rs of La. State Univ. & Agric. & Mech. Coll.*, Civ. A. No. 13-5-BAJ-RLJB, 2013 WL 5281173, at *8 (M.D. La. Sept. 18, 2013).

Title IX applies to "institutions and programs that receive federal funds . . . but has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald*, 555 U.S. at 257 (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)); *see also Alegria v. Williams*, 314 F. App'x 687, 690 (5th Cir. 2009) (acknowledging

the rule as discussed in *Fitzgerald*).[23] To the extent Plaintiff seeks to allege a Title IX claim against the individual Defendants, the Court finds that Plaintiff's Title IX claims against the individual Defendants were improperly pleaded. Thus, Plaintiff's claims against the individual Defendants are dismissed.

To state a claim under Title IX, a plaintiff must allege that defendant (1) received federal financial assistance, and (2) excluded him from participation in defendant's educational programs because of his sex. *See Cannon*, 441 U.S. at 680. One basis of the motion to dismiss is that Plaintiff failed to allege that he was discriminated because of his sex. *See* Mot. to Dismiss 14. Though the complaint alleges that Plaintiff is a white male, he does not assert how he was treated differently than similarly situated females. Plaintiff obviously believes that Defendants did not treat him fairly; however, Title IX proscribes general unfairness—only intentional discrimination on one of the enumerated bases. *See Easley v. Univ. of Tex. at Arlington*, Civ. A. No. 4:13-CV-589-A, 2013 WL 5781166, at *5 (N.D. Tex. Oct. 25, 2013) (holding that "the complaint alleges nothing as would show that defendant intentionally treated plaintiff differently than any female student under the same circumstance"). Thus, it is insufficient for Plaintiff to allege that he is a white male and that unfavorable treatment must therefore be based on his sex.

---

[23] Although the Fifth Circuit has not directly addressed the issue of individual liability under Title IX in a published opinion, the majority of courts that have considered the issue have ruled that Title IX does not permit suits against individuals. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."); *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 640 (7th Cir. 1999); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638–40 (1999) ("[I]t was not until recently that a court with binding authority found that only recipients of federal funds may be liable for damages under Title IX.")); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 901 (1st Cir. 1988); *see also Goins v. Hitchcock I.S.D.*, 191 F. Supp. 2d 860, 869 (S.D. Tex. 2002) *aff'd sub nom.*, 65 F. App'x 508 (5th Cir. 2003); *Brooks v. Tulane Univ.*, Civ. A. No. 96-443, 1996 WL 709424, at *2 (E.D. La. 1996); *Bowers v. Baylor Univ.*, 862 F.Supp. 142, 145–46 (W.D. Tex. 1994); *Doe v. Petaluma City Sch. Dist.*, 830 F.Supp. 1560, 1577 (N.D. Cal. 1993); *Bougher v. Univ. of Pittsburgh*, 713 F.Supp. 139, 143 (W.D. Pa. 1989), *aff'd*, 882 F.2d 74 (3d Cir. 1989).

*See id.* Here, nothing in the complaint supports such a conclusion. Stated differently, because nothing in the complaint alleges a claim for relief that is plausible on its face, Plaintiff's Title IX claim is dismissed against UTEP. *See Twombly*, 550 U.S. at 570.

**ii. Section 504 of the Rehabilitation Act**

Plaintiff alleges that UTEP violated Section 504 of the Rehabilitation Act when an employee refused to open a locked classroom door 15 minutes early because of concerns of theft. Original Pet. 58–59. Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) Like Title II of the Americans with Disabilities Act, Section 504 provides that no qualified individual with a disability "shall, *solely* by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* (emphasis added). The only difference between the ADAAA and the Rehabilitation Act in their application to this case is that Title II of the ADAAA more broadly prohibits exclusion "by reason of [a] disability." *Compare* 42 U.S.C. § 12132 *with* 29 U.S.C. § 794(a); *see also Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F.Supp.2d 874, 879 (S.D. Tex. 2012), *aff'd,* 524 F. App'x 93 (5th Cir. 2013). Thus, while Section 504 establishes a "sole cause" test for causation, the ADAAA instead establishes a "motivating factor" test. *See also Pinkerton v. Spellings*, 529 F.3d 513, 516–19 (5th Cir. 2008); *see also Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503–04 (5th Cir. 2002).

Since Plaintiff's claims under the Rehabilitation Act mimic his ADAAA claims, the above distinction does not affect the analysis under the Rehabilitation Act because the Court has concluded above that Hudnall's claims fail under the less exacting "motivating factor" causation standard. Thus, Plaintiff's claims under the Rehabilitation Act fail for the same reasons his

ADAAA claims fail. Accordingly, Plaintiff's claims under Section 504 of the Rehabilitation Act are dismissed because Plaintiff failed to show he was adversely treated solely as a result of his alleged disability.

**iii. Age Discrimination Act of 1975**

Plaintiff alleges claims under the Age Discrimination Act of 1975 against UTEP and Defendant Dethlefs. Plaintiff alleges the following statements to evidence his age discrimination claim: (1) Plaintiff was informed by a UTEP official that "he was too far along (too old) and the Doctoral Program was beyond his capability (too dumb)" and (2) when Defendant Dethlefs identified him as a "Vietnam Veteran [that] trained in combat and [was] prone to violence," Defendant must have been referring to his age in order to reach such a conclusion. Original Pet. 75. Notwithstanding Plaintiff's allegations, Defendants assert that Plaintiff's claim is barred because he failed to comply with the notice and exhaustion requirements of the Act.

In order to bring an age discrimination claim against a recipient of federal financial assistance, such as UTEP, a plaintiff must satisfy two requirements. *See Parker v. Bd. of Sup'rs Univ. of La.-Lafayette*, 296 F. App'x 414, 417–19 (5th Cir. 2008) (*per curiam*) (unpublished). First, the plaintiff must exhaust administrative remedies. *See* 42 U.S.C. § 6104(f); 34 C.F.R. § 110.39(a). Second, the plaintiff "shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." 42 U.S.C. § 6104(e)(1); *see also* 34 C.F.R. § 110.39(b)(3)(iii) ("[T]he complainant shall give 30 days notice by registered mail to the Secretary [of the Department of Education], the Secretary of Health and Human Services, the Attorney General of the United States, and the recipient [of federal financial assistance]. . . .").

To exhaust his administrative remedies, Hudnall must have filed a complaint with United States Department of Education, Office for Civil Rights ("OCR"), and OCR must have either (1) made no finding within 180 days of that filing or (2) made a finding in favor of the university, i.e. UTEP. *See* 34 C.F.R. § 110.39(a)(1)–(2). Here, Plaintiff does not allege that he filed a complaint with OCR, or that OCR entered into a Commitment to Resolve ("CTR") with the university. Moreover, Plaintiff does not allege or provide documentation that OCR informed Hudnall of his right to sue. Thus, because Plaintiff failed to allege that he exhausted, or attempted to exhaust, his administrative remedies, Plaintiff's claim under the Age Discrimination Act is dismissed.[24]

**iv. Breach of Contract**

Finally, Plaintiff asserts a breach of contract claim against UTEP based on various, yet unnamed, university policies and procedures. *See* Original Pet. 47. Plaintiff alleges that "UTEP breached said contract with Plaintiff . . . through the actions of its agents by creating a situation where [Plaintiff's] life and safety [were] placed in jeopardy [by] improper, unauthorized and unlicensed medical examinations by unlicensed individuals." *Id.*

Defendants assert that Plaintiff fails to state a breach of contract claim. The essential elements of a breach of contract claim in Texas are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *See Mullins v.*

---

[24] Plaintiff also failed to show that he provided adequate notice of his intention to file suit. According to 42 U.S.C. § 6104(e)(1), 30 days' notice must be sent by registered mail to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed. Notice must also be sent to OCR, as required by 34 C.F.R. § 110.39(b)(3)(iii). The statute and regulation additionally require that the notice "shall state the nature of the alleged violation, the relief requested, the court in which the action will be brought, and whether or not attorney's fees are being demanded." 42 U.S.C. § 6104(e)(2); *see also* 34 C.F.R. § 110.39(b)(3)(iv).

*TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th] 2005, pet. denied)).

Upon reviewing Plaintiff's complaint, it is unclear as to which policies and/or regulations Plaintiff is basing his breach of contract claim upon; moreover, Plaintiff fails to allege that he and UTEP are parties to the contract at issue. Aside from the issue as to whether a contract is in existence, Plaintiff fails to allege how UTEP violated the alleged contract. Also, Plaintiff fails to allege any damages that he incurred as a result from the supposed breach. Because Plaintiff fails to sufficiently allege a claim for breach of contract, Plaintiff's claim is dismissed.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED**, and Plaintiff Robert Hudnall's claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk **SHALL CLOSE** the case.

**SO ORDERED and SIGNED this** 21st **day of February, 2014.**

[signature]

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**